UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL DIAMOND,

    *Plaintiff*,

*v*.                                      CASE NO. 12-CV-13165

COMMISSIONER OF              DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 17.)

Plaintiff Earl Diamond was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 29.) Plaintiff's employment history includes "numerous jobs," such as general laborer, office clerk, cashier, dishwasher, short-order cook, janitor, snow removal worker, and tax preparer. (Tr. at 143-44.) Plaintiff filed the instant claims on January 10, 2009, alleging that he became unable to work on November 19, 2008. (Tr. at 112, 116.) The claims were denied at the initial administrative stages. (Tr. at 62, 63.) In denying Plaintiff's claims, the Commissioner considered bronchial asthma as a possible basis for disability. (*Id.*) On February 1, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the application for benefits *de novo*. (Tr. at 8-22, 23-59.) In a decision dated February 16, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 18.) Plaintiff requested a review of this decision on April 4, 2011. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 19, 2012, when, after review of additional exhibits[2] (Tr. at 236-67, 450-8-, 481-95), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On July 18, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

B.   **Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since November 19, 2008, the alleged amended onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's bronchial asthma and some visual difficulties with history of eye surgery and use of eyeglasses were "severe" within the meaning of the second sequential step. (Tr. at 14-16.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a clerk. (Tr. at 17-18.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 16-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was diagnosed with and treated for asthma since 2007. (Tr. at 412.) Plaintiff was treated at McLaren Occupational Center from September through December of 2008. (Tr. at 278-92.) Plaintiff was treated by Donald Robinson, M.D., from September 2008 through August 2009. (Tr. at 303-31.) Based on Plaintiff's reported pain and nausea, an ultrasound of his abdomen was done on July 24, 2009, and the test results were "[n]ormal[.]" (Tr. at 322.) Dr. Robinson also noted that Plaintiff's condition "will not preclude return to work" and that the only limitation noted was "to avoid dust and fumes." (Tr. at 310.)

Plaintiff was treated at Genesys Regional Medical Center in December 2008 for breathing and lung issues. (Tr. at 268-77.) On December 9, 2008, a CT scan revealed a "2.5 x 3.6 cm subcarinal mass with 7 x 5 mm noncalcified nodule in the right lower lobe" of Plaintiff's lung. (Tr.

at 270.) Plaintiff was diagnosed with a "[p]ulmonary nodule (Acute)." (Tr. at 273.) On September 4, and December 16, 2009, a CT scan of Plaintiff's chest showed the same nodule and noted that it "does not have any malignant characteristics." (Tr. at 350, 380.) In addition, it was noted that Plaintiff's "airway is patent" and there were "[n]o pleural effusions or pneumothorax [] present." (Tr. at 380.) Chest x-rays taken on February 26, 2009, showed "[n]o significant change from prior study." (Tr. at 392.)

Plaintiff was treated by Geeta Rode, M.D., for breathing issues from December 2008 through November 2010. (Tr. at 332-59, 444-45, 448.) On December 31, 2008, a pulmonary function test showed "[n]o evidence of chronic obstructive pulmonary disease[,]" "[s]light reduction in total lung capacity and diffusion capacity suggestive of restrictive impairment" and "[f]lattening of the inspiratory limb suggestive of upper airway obstruction." (Tr. at 325, 347.) On August 18, 2009, Dr. Rode cited Plaintiff's history of bronchial asthma and noted that Plaintiff was "noncompliant with therapy." (Tr. at 323.) On April 6, 2009, Dr. Rode noted that Plaintiff had "questions about returning back to work. I have explained to him that since he has bronchial asthma, he should try and avoid exposure to dust and fumes which can trigger bronchospasm." (Tr. at 324.) On August 31, 2009, another pulmonary function test revealed "[n]o evidence of chronic obstructive pulmonary disease" and "[m]ild restrictive impairment. Clinical correlation suggested." (Tr. at 344.)

Plaintiff was also treated at Hurley Medical Center from February through December of 2009. (Tr. at 370-443.) On February 26, 2009, x-rays of Plaintiff's lungs showed:

> Heart size and pulmonary vessels are normal. Previously noted atelectasis base has resolved. Currently, there is improving density at the right base with residual density at the lateral aspect of the right mid and lower lung field and at the right base with possible small right effusion. Continued follow up is recommended. No pneumothrax is identified.

8

(Tr. at 355, 408.)

On March 24, 2009, Plaintiff underwent an "excision of a bronchogenic cyst." (Tr. at 354, 396.) It was noted that Plaintiff "made a full recovery[,]" was "well healed" and was " not having any difficulty swallowing and eating whatever he likes." (*Id.*) It was also noted that Plaintiff "plans to return to work at H & R Block and to go back to college." (*Id.*)

Plaintiff was treated at the Cukrowski Eye Center from November 2008 through December 2010. (Tr. at 293-302, 363-69, 449.) On November 24, 2009, Dr. Cukrowski indicated that Plaintiff's "visual acuity is 20/20. Intraocular pressures are well controlled" and the doctor noted that Plaintiff's "[a]nterior segment has open gonioscopy and some corneal dryness." (Tr. at 364.) Dr. Cukrowski diagnosed "[g]laucoma" and "[d]ry eyes." (*Id.*) On December 15, 2010, Dr. Cukrowski wrote to Plaintiff indicating that Plaintiff had missed his appointment. (Tr. at 449.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on September 19, 2009, by Heidi Schonle, a single decision-maker ("SDM"), concluded that there were no exertional, postural, manipulative, visual, or communicative limitations established. (Tr. at 66-69.) The assessment also concluded that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, gases, and poor ventilation. (Tr. at 69.) The assessment concluded that there was "no medical information to support his complaints of pain," but that Plaintiff's "fatigue could be caused by his bronchial asthma however it is also noted that clmt is not fully compliant w/ meds." (Tr. at 70.) The assessment noted that the medical source statement on file was not significantly different from the RFC assessment because the statement from Dr. Robinson was that Plaintiff was "not doing anything but sitting around house . . . non compliant w/ meds . . . FEELS IF PT WERE PROPERLY MOTIVATED AND COMPLIANT W/ MEDS HE COULD WORK W/ LIMITATION[.]" (Tr. at 71 (emphasis in original).)

9

Plaintiff indicated in his daily activity report that he lives alone and is able to care for his personal needs, prepares his own meals on a daily basis, cleans his apartment but stated he could use some help doing so, is able to drive a car but indicated that it hurts to steer since his car does not have power steering, is able to shop in stores for food once a week for "over 2 hours[,]" is able to handle his finances, enjoys reading and watching television every day, watches movies, enjoys talking with others and going to the library three or four times per week. (Tr. at 155-59.)

At the administrative hearing, the ALJ noted that Plaintiff had been represented by attorney Arena Jacobs, but that she had withdrawn as Plaintiff's representative on November 19, 2009. (Tr. at 25.) The ALJ then thoroughly explained Plaintiff's right to be represented at the hearing (Tr. at 25-26), and Plaintiff chose to waive that right and proceed without counsel. (Tr. at 26.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> should maximally lift weights of 40 pounds, could repetitively lift weights of 20 pounds or less. Could stand and walk at least six of eight hours, or sit at least six of eight hours in a normal eight-hour workday. That the individual, in a potential work setting, needs to avoid extremes of cold and heat - - humidity, fumes, odors, dust and gasses. And that individual should also avoid hazards such as unprotected heights or moving industrial machinery, and should not, in a potential work setting, be required to do prolonged operation, paper shredding machinery.

(Tr. at 54-55.) The VE responded that such a person could perform some of Plaintiff's past work as an office clerk, which did not involve using a paper shredder. (Tr. at 55.) When asked by the ALJ, the VE further testified that the more sterile environments for such office clerk jobs would include those in law offices, governmental offices, and some production facilities such as those that make parts for durable medical equipment. (*Id.*) The VE added that there thousands of such jobs in the sedentary to light exertional level available in the State of Michigan. (Tr. at 56.) The

10

VE noted that Plaintiff's former position as a tax preparer or as a clerk for Oakland County would also be examples of work in relatively sterile settings. (Tr. at 56-57.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to return to his past relevant work as a clerk. (Tr. at 17-18.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and

11

supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 16-17.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, the *pro se* Plaintiff contends that he is qualified for socials security benefits based on his asthma and visual impairments and does not have substantial gainful employment. (Doc. 12 at 1-4.) In addition, Plaintiff argues that "Social Security Disability denied 70% of its first time disability applications each year" and that this is done "for reasons that are unjustified." (*Id.* at 5.)

I suggest that substantial evidence supports the ALJ's findings. Although Plaintiff has asthma, there is no evidence that this impairment is disabling. As of April 6, 2009, Dr. Rode noted

that Plaintiff had "questions about returning back to work," and the doctor "explained to him that since he has bronchial asthma, he should try and avoid exposure to dust and fumes which can trigger bronchospasm." (Tr. at 324.) Dr. Rode did not indicate that work should be avoided. Instead, she simply indicated that Plaintiff would need to avoid dust and fumes, i.e., that Plaintiff is subject to environmental limitations. Plaintiff's pulmonary function test showed only "[m]ild restrictive impairment." (Tr. at 344.) Dr. Robinson also noted that Plaintiff's condition would "not preclude return to work" and that the only limitation was "to avoid dust and fumes." (Tr. at 310.)

Although Plaintiff had a "bronchogenic cyst[,]" after its excision, Plaintiff was "well healed" and was "not having any difficulty swallowing and eating whatever he likes." (Tr. at 354, 396.) At that time, Plaintiff "plan[ned] to return to work at H & R Block and to go back to college." (*Id.*)

Although Plaintiff was diagnosed with glaucoma in November 2009, Dr. Cukrowski indicated that Plaintiff's "visual acuity is 20/20" and that his "[i]ntraocular pressures are well controlled[.]" (Tr. at 364.)

In addition, the RFC assessment noted that the medical source statement on file was not significantly different from the RFC assessment because the statement from Dr. Robinson was that Plaintiff was "not doing anything but sitting around house . . . [and was] non-compliant w/ meds . . . FEELS IF PT WERE PROPERLY MOTIVATED AND COMPLIANT W/ MEDS HE COULD WORK W/ LIMITATION[.]" (Tr. at 71 (emphasis in original).) I therefore suggest that the ALJ's findings are supported by substantial evidence.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he is able to: care for his personal needs, prepare his own meals on

a daily basis, clean his apartment (but stated he could use some help doing so), drive a car (but indicated that it hurts to steer since his car does not have power steering), shop in stores for food once a week for "over 2 hours[,]" handle his own finances, read and watch television every day, watch movies, talk with others, and go to the library three or four times per week. (Tr. at 155-59.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Finally, I suggest that Plaintiff's reference to generalized statistical evidence of the number of disability applications which are denied by the Commissioner is insufficient to cast doubt on the ALJ's findings in the instant case. Plaintiff has not alleged any bias on the part of the ALJ. Even if he had, courts have long applied the presumption "that judicial and quasi-judicial officers, including ALJs, carry out their duties fairly and impartially." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011); *see also Schweiker v. McClure,* 456 U.S. 188, 195, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1 (1982). The Sixth Circuit has explained that

> [t]he burden of overcoming the presumption of impartiality "rests on the party making the assertion [of bias]," *Schweiker,* 456 U.S. at 196, 102 S. Ct. at 1670, and the presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975). In other words, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.

*Navistar Intern. Transp. Corp. v. U.S. E.P.A.,* 941 F.2d 1339, 1360 (6th Cir. 1991).

In the instant case, Plaintiff does not point to any particular conduct or comment made by the ALJ at the administrative hearing. Instead, Plaintiff relies on the outcome of the case and the overall number of claims denied by the Commissioner. Statistical evidence alone is inadequate to establish bias. *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (collecting cases). I further suggest that bias is not evident from the record and, since bias cannot be based on speculation or

inference, Plaintiff has failed to rebut the presumption of fairness and impartiality. *See Bailey*, 413 F. App'x at 856. I therefore suggest that the ALJ's findings are not undermined by Plaintiff's reference to the number of denials by the Commissioner.

Therefore, I suggest that the ALJ's conclusion that Plaintiff could perform his past relevant work as a clerk or that Plaintiff could perform a limited range of medium work is supported by substantial evidence.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ Charles E Binder |
|  | CHARLES E. BINDER |
| Dated: June 25, 2013 | United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and on the following non-ECF participant via the United States Postal Service: Earl Diamond, 3115 Dale Ave., Flint, MI 48506.

|  |  |
|---|---|
| Date: June 25, 2013 | By    s/Patricia T. Morris |
|  | Law Clerk to Magistrate Judge Binder |